UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| RYAN S. ROGERS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:17-cv-54 ) |
| NANCY A. BERRYHILL, Deputy Commissioner for Operations, Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Ryan S. Rogers, on June 28, 2017. For the following reasons, the decision of the Commissioner is **AFFIRMED.**

*Background*

The plaintiff, Ryan S. Rogers, filed an application for Disability Insurance Benefits on March 31, 2014, alleging a disability onset date of November 28, 2004. (Tr. 18). The Disability Determination Bureau denied Rogers's application on July 10, 2014, and again upon reconsideration on September 4, 2014. (Tr. 18). Rogers subsequently filed a timely request for a hearing on October 14, 2014. (Tr. 18). A video hearing was held on April 21, 2016, before Administrative Law Judge (ALJ) Mary Withum, and the ALJ issued an unfavorable decision on June 10, 2016. (Tr. 18-31). Vocational Expert (VE) Maria Vargas and James Toth, Psy.D., testified at the hearing. (Tr. 18). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3).

Rogers last met the insured status requirements of the Social Security Act on September 30, 2014. (Tr. 20). The ALJ issued an unfavorable decision on June 10, 2016, and made

findings as to each of the steps in the five-step sequential analysis. (Tr. 18-31). At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Rogers had not engaged in substantial gainful activity from his alleged onset date of November 28, 2004 through his date last insured of September 30, 2014. (Tr. 20).

At step two, the ALJ determined that Rogers had the following severe impairments: bipolar disorder, history of polysubstance dependence, and status post repair of remote right upper extremity ulnar nerve laceration. (Tr. 20). At step three, the ALJ concluded that Rogers did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21). The ALJ determined that Rogers's right arm impairment did not meet Listing 11.14 because the record did not indicate significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, as defined in 11.00(C). (Tr. 21). The ALJ also considered Rogers's mental impairments, singly and in combination, according to the criteria in Listing 12.04. (Tr. 21). Accordingly, the ALJ determined that the severity of Rogers's mental impairments did not meet or medically equal Listing 12.04. (Tr. 21).

In finding that Rogers did not meet the above listing, the ALJ considered the paragraph B criteria for mental impairments, which required at least two of the following:

> marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

(Tr. 21). The ALJ defined a marked limitation as more than moderate but less than extreme and repeated episodes of decompensation, each of extended duration, as three episodes within one year or once every four months with each episode lasting at least two weeks. (Tr. 21).

The ALJ determined that Rogers had mild restriction in activities of daily living. (Tr. 21). Rogers alleged that he had difficulty with his memory and keeping appointments. (Tr. 21). He also alleged that he had mood swings and periods of depression during which he had difficulty with activities of daily living. (Tr. 21). However, the ALJ noted that according to his function report he indicated that he was able to cook, help with chores, shop, pay bills, count change, and handle a bank account. (Tr. 21). At the medical consultative examination in June of 2014, Rogers reported that he could perform his activities of daily living. (Tr. 21). The ALJ considered the findings of the State agency consultants that Rogers had mild limitations in activities of daily living. (Tr. 21).

Next, the ALJ concluded that Rogers had moderate difficulties in social functioning. (Tr. 22). Rogers alleged that he had severe anxiety and that he often was irritable. (Tr. 22). However, the ALJ noted that he lived with his girlfriend. (Tr. 22). Also, the ALJ noted that Rogers used public transportation and rode to his appointments with his friends. (Tr. 22). The ALJ considered the findings of the State agency consultants that Rogers had moderate limitations in social functioning. (Tr. 22).

Finally, the ALJ found that Rogers had moderate difficulties in concentration, persistence, or pace. (Tr. 22). Rogers has alleged that he had difficulty completing tasks when he was depressed and that he had difficulty concentrating for more than a short period. (Tr. 22). The ALJ noted that Rogers reported that he could pay bills, count change, handle a bank account, and watch television. (Tr. 22). At the consultative examination in June of 2014, Rogers was able to complete serial three's and his memory was intact. (Tr. 22). The ALJ considered the findings of the State agency consultants that Rogers had moderate limitations in concentration, persistence, or pace. (Tr. 22). Because Rogers's mental impairments did not cause at least two

3

"marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the ALJ determined that he did not satisfy the paragraph B criteria. (Tr. 22). Additionally, the ALJ concluded that Rogers did not satisfy the paragraph C criteria. (Tr. 22).

After consideration of the entire record, the ALJ then assessed Rogers's residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to only frequently handling, fingering, and feeling with his right upper extremity; he is further limited to simple, routine, and repetitive tasks, involving only occasional workplace decision making, and only occasional work place changes; the claimant is limited to only occasional interactions with coworkers, supervisors, and the general public.

(Tr. 23). The ALJ explained that in considering Rogers's symptoms she followed a two-step process. (Tr. 23). First, she determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Rogers's pain or other symptoms. (Tr. 23). Then, she evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Rogers's functioning. (Tr. 23). The ALJ indicated that after consideration of the evidence, she found that Rogers's medically determinable impairments reasonably could be expected to cause the alleged symptoms; however, his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 23-24).

At step four, the ALJ found that through the date last insured Rogers was capable of performing his past relevant work as a product assembler. (Tr. 29). However, in the alternative in considering Rogers's age, education, work experience, and RFC, the ALJ concluded that there

were jobs in the national economy that Rogers could perform, including store laborer (90,700 jobs nationally), laundry worker (395,000 jobs nationally), and plastic products laborer (106,000 nationally). (Tr. 30). The ALJ found that Rogers had not been under a disability, as defined in the Social Security Act, from November 28, 2004, the alleged onset date, through September 30, 2014, the date last insured. (Tr. 31).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting ***Consol. Edison Co. v. NLRB***, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see* ***Bates***, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no errors of law. ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that he is unable

5

"to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 404.1520**. The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. § 404.1520(b)**. If he is, the claimant is not disabled and the evaluation process is over. If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 404.1520(c)**; *see* ***Williams v. Colvin***, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work. If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. **20 C.F.R. § 404.1520(e)**. However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f)**.

Rogers has requested that the court reverse the ALJ's decision and remand this matter for additional proceedings. In his appeal, Rogers has argued that the ALJ improperly considered the medical opinions of record. Rogers contends that the ALJ's decision is not supported by substantial evidence because the ALJ improperly evaluated the opinions of Rogers's treating medical professionals, as well as the psychological consultative examiners. Rogers asserts that the ALJ erred in relying primarily on the opinions of the State agency psychological consultants, who never examined him.

A treating source's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. **20 C.F.R. § 404.1527(d)(2)**; *see* **Bates v. Colvin**, 736 F.3d 1093, 1099 (7th Cir. 2013); **Punzio v. Astrue**, 630 F.3d 704, 710 (7th Cir. 2011); **Schmidt v. Astrue**, 496 F.3d 833, 842 (7th Cir. 2007). The ALJ must "minimally articulate his reasons for crediting or rejecting evidence of disability." **Clifford v. Apfel**, 227 F.3d 863, 870 (7th Cir. 2000) (quoting **Scivally v. Sullivan**, 966 F.2d 1070, 1076 (7th Cir. 1992)); *see* **20 C.F.R. § 404.1527(d)(2)** ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

"[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight and becomes just one more piece of evidence for the ALJ to consider." **Bates**, 736 F.3d at 1100. Controlling weight need not be given when a physician's opinions are inconsistent with his treatment notes or are contradicted by substantial evidence in the record, including the claimant's own testimony. **Schmidt**, 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if the opinion is inconsistent with

7

the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability."); *see, e.g.*, *Latkowski v. Barnhart*, 93 F. App'x 963, 970–71 (7th Cir. 2004); *Jacoby v. Barnhart*, 93 F. App'x 939, 942 (7th Cir. 2004). If the ALJ was unable to discern the basis for the treating physician's determination, the ALJ must solicit additional information. *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 514 (7th Cir. 2009)). Ultimately, the weight accorded a treating physician's opinion must balance all the circumstances, with recognition that, while a treating physician "has spent more time with the claimant," the treating physician may also "bend over backwards to assist a patient in obtaining benefits . . . [and] is often not a specialist in the patient's ailments, as the other physicians who give evidence in a disability case usually are." *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006) (internal citations omitted); *see Punzio*, 630 F.3d at 713.

If the ALJ decides that the treating physician's opinion should not be given controlling weight, the ALJ is "required by regulation to consider certain factors in order to decide how much weight to give the opinion." *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). These factors are set forth in **20 C.F.R. § 404.1527(c)(1)-(5)** and include: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) supportability; 4) consistency with the record as a whole; and 5) whether the treating physician was a specialist in the relevant area. An ALJ need not explicitly mention every factor, so long as her decision shows that she "was aware of and considered many of the factors." *Schreiber v. Colvin*, 519 Fed.Appx. 951, 959 (7th Cir. 2013).

On December 4, 2014, Rogers established treatment with Dr. James Toth, Psy.D. The ALJ noted that thereafter Rogers met with Dr. Toth for counseling and with a nurse practitioner

8

for medication management monthly. (Tr. 26). Throughout his treatment of Rogers, Dr. Toth noted GAF scores that ranged from 42 to 45. (Tr. 26). On July 31, 2015, Dr. Toth submitted a medical source statement indicating that Rogers had marked limitations in his ability to perform the following functional activities: remember locations and work-like procedures; understand, remember, and carry-out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; complete a normal work-day and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in the work setting; and travel in unfamiliar places or use public transportation. (Tr. 26, 726-727). However, Dr. Toth indicated that Rogers made marked progress in August of 2015 and October of 2015. (Tr. 26).

Dr. Toth testified at the hearing that Rogers could not attend to his activities of daily living and that he frequently missed appointments due to his memory. (Tr. 27, 45-59). Also, he indicated that Rogers had difficulty in group settings or being around other people. (Tr. 27, 45-59). However, he acknowledged that he saw improvement and that Rogers was doing better with medication and therapy. (Tr. 27, 45-59).

The ALJ acknowledged that Dr. Toth was Rogers treating psychologist. (Tr. 27). However, she stated that she did not assign controlling weight to his opinions because they were not well-supported by medically acceptable clinical and laboratory diagnostic techniques and

9

were inconsistent with other substantial evidence in the record. (Tr. 27). The ALJ did not explicitly state the weight given to Dr. Toth's opinion, but that error is harmless.

The ALJ's decision indicated that, first and most critically, Dr. Toth began treating Rogers after September 30, 2014, the date last insured. (Tr. 27). Therefore, his opinion did not cover the period under review in the instant matter. The ALJ also discredited his opinion because he failed to speak to any of Rogers's past treatment providers. (Tr. 27). Moreover, the ALJ considered that Dr. Toth relied on Rogers's self-reports and that Rogers had provided the answers for the Disability Questionnaire. (Tr. 27). The ALJ recognized that Dr. Toth's treatment notes indicated consistent reports of improvement and that Rogers's medical records prior to the date last insured indicated less severity than Dr. Toth's findings. (Tr. 27). The ALJ acknowledged that there were extended gaps in Rogers's treatment. (Tr. 27). Finally, the ALJ noted that Rogers had engaged in drug use, that he had minimal symptoms while incarcerated, and that he displayed drug and disability seeking behavior in July of 2014. (Tr. 27).

An ALJ must first determine whether the treating source's opinion is entitled to controlling weight in consideration of supportability and consistency with the record. If the ALJ finds the opinion is lacking in either of these aspects, the ALJ must proceed to step two, where she applies the checklist of factors articulated in 20 C.F.R. § 404.1527. The ALJ uses these factors to determine exactly what weight to assign to the opinion. This process consists of two "separate and distinct steps." ***Williams v. Berryhill***, 2018 WL 264201, at *3 (N.D. Ill. Jan. 2, 2018). The court finds that the ALJ has minimally articulated her reasoning for not assigning controlling weight to Dr. Toth's opinions. The reasons cited by the ALJ are among those that the regulations have allowed.

First, the ALJ acknowledged that Dr. Toth was Rogers's treating psychologist. However, she noted that he began treating Rogers on December 4, 2014, which was after his date last insured. A claimant must demonstrate disability on or before the date last insured to demonstrate eligibility for disability insurance benefits. *See* **42 U.S.C. § 423(a)(1)(A), (c)(1).** The Seventh Circuit has held that evidence after the date last insured may be relied on to show the claimant's condition within the relevant period. *See* ***Bjornson v. Astrue***, 671 F.3d 640, 642 (7th Cir. 2012) (the government's argument that evidence after the date last insured is irrelevant is "an argument that both is factually mistaken and violates the *Chenery* rule, because the administrative law judge ruled that [medical data after the date last insured] *could* be considered—and he was right") (emphasis in original)). At the hearing, Dr. Toth testified that he had not spoken to Rogers's prior treatment providers, but that he had reviewed Rogers's prior records. (Tr. 56). He also testified that he had only been treating Rogers for about 9-10 months prior to the hearing and that treatment began after 2015, which is further removed in time from the date last insured, September 30, 2014. (Tr. 53, 56). Therefore, given Dr. Toth's testimony and the time that elapsed since the date last insured there was no indication that Dr. Toth's findings showed Rogers condition during the relevant period.

Next, the ALJ noted that Dr. Toth had relied on Rogers's self-reports. The ALJ's finding that Dr. Toth relied on Rogers's self-reports was supported by the record. Dr. Toth's treatment notes indicated that, "Ryan requested that this provider complete a Disability Questionnaire as requested by his disability attorney. This was completed with Ryan providing the answers." (Tr. 797). An ALJ may give less weight to a source's opinion when it appears to rely heavily on the claimant's subjective complaints. ***Givens v. Colvin,*** 551 F. App'x 855, 860 (7th Cir. 2013); *see* **20 C.F.R. § 404.1527(c)(3)** ("The more a medical source presents relevant evidence

11

to support an opinion, particularly medical signs and laboratory findings, the more weight we will give the opinion. The better explanation a source provides for an opinion the more weight we will give that opinion."); *Filus v. Astrue*, 694 F.3d863, 868 (7th Cir. 2012). An ALJ properly discounts a medical opinion that relies entirely on the claimant's subjective complaints. *Loveless v. Colvin,* 810 F.3d 502, 507 (7th Cir. 2016); *see* **20 C.F.R. § 404.1527(c)(3)**; *Bates v. Colvin,* 736 F.3d 1093, 1100 (7th Cir. 2013). Also, the ALJ concluded that Dr. Toth's findings were more severe than the medical records before the date last insured. When a treating source's opinion conflicts with the record, the ALJ may give the opinion less weight. *Geer v. Berryhill,* 276 F.Supp.3d 876, 884 (E.D. Wis. 2017).

Rogers in his reply brief stated, "it is not the claimant's contention that the ALJ erred in failing to accord controlling weight to the opinions of his treating psychologist, but rather in according 'significant weight' to the opinions of the State Agency psychologists . . . while according significantly less weight to the opinions of the psychologists who had examined the claimant on at least one occasion." Therefore, Rogers contends that that the ALJ improperly assigned more weight to the State agency psychologists, Drs. Lovko and Larsen's opinions, rather than to the consultative examiners, Drs. Ascough and Oetting opinions.

Dr. Ascough opined that with treatment Rogers probably could return to work. (Tr. 27, 329). Dr. Oetting opined that Rogers may have difficulty with full time employment. (Tr. 27, 710). However, Dr. Oetting found that Rogers had adequate communication skills to perform unskilled work. (Tr. 27, 710). The ALJ found that their opinions were generally consistent with the record. (Tr. 27). The ALJ assigned the "opinions some weight insofar as they indicate lesser severity than the claimant alleged." (Tr. 27). The ALJ noted that Rogers's prison treatment records indicated few symptoms and that Rogers had displayed drug and disability seeking

12

behavior in July of 2014. (Tr. 27). Moreover, the ALJ concluded that the Drs. Ascough and Oetting failed to provide any specific functional limitations. (Tr. 27).

The ALJ assigned significant weight to the opinions of State agency psychological consultants, Drs. Lovko and Larsen. (Tr. 28, 88-91, 102-104). In the MRFC-Additional Explanation, Drs. Lovko and Larsen opined that Rogers was able to maintain at least a minimal level of relationship with others. (Tr. 28, 90, 104). They concluded that Rogers could not work with the general public or in jobs which require intensive, interpersonal contact with others. (Tr. 28, 90, 104). Moreover, they indicated that Rogers would appear to work best alone, in semi-isolation from others or as part of a small group and with a supervisor who was normally considerate and positive; that Rogers should be able to attend to tasks for a two hour period of time; and that he was capable of maintaining a schedule. (Tr. 28, 90, 104). Drs. Lovko and Larsen also noted that the evidence suggested that Rogers could understand, remember, and carry out unskilled tasks. (Tr. 28, 90, 104).

In affording significant weight to Drs. Lovko and Larsen's opinions, the ALJ noted that both consultative examiners, Drs. Ascough and Oetting, also found that Rogers was cooperative. (Tr. 28). Also, Rogers had some difficulty with complex tasks, but he was able to complete serial three's and his remote memory was intact. (Tr. 28). The ALJ noted that Rogers reported that he was able to care for himself and perform some household chores. (Tr. 28).

An ALJ is free to assign great weight to an agency consultant but must explain why she did so. ***McKinzey v. Astrue***, 641 F.3d 884, 891 (7th Cir. 2011). Generally, an ALJ affords more weight to the opinion of an examining source than the opinion of a non-examining source, but the ultimate weight given depends on the opinion's consistency with the objective medical evidence, the quality of the explanation, and the source's specialty. *Givens v. Colvin*, 551 F.

13

App'x 855, 860 (7th Cir. 2013); **20 C.F.R. § 404.1527(c)**. "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). An ALJ must evaluate every medical opinion in the record and, in determining the value of the opinion, must consider factors such as whether the medical source has examined the claimant; whether the medical source has adequately supported the opinion; whether the opinion is consistent with the record as a whole; and whether the source has a particular specialization in a given area. **20 C.F.R. § 404.1527(c).** However, the final conclusions on certain issues, such as a claimant's ability to work, are reserved to the Commissioner. **20 C.F.R. § 404.1527(c).**

The ALJ has identified reasons for assigning only "some weight" to Drs. Ascough and Oetting findings. Because neither Dr. Ascough nor Dr. Oetting gave opinions as to Rogers's functional limitations, no reasonable ALJ on remand would reach a different conclusion regarding his RFC. Moreover, the ALJ adequately has explained and provided "good reasons" for assigning greater weight to the non-examining consultants. Thus, the ALJ has built a logical bridge from the evidence to her conclusion. The court need not remand this case for further proceedings.

Based on the foregoing reasons, the decision of the Commissioner is **AFFIRMED**.

ENTERED this 11th day of September, 2018.

/s/ Andrew P. Rodovich
United States Magistrate Judge